

**SIGNED this 01 day of August, 2006.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

In re

DONNIE WILTON PRICE and         No. 05-52716
PATRICIA ANN PRICE,             Chapter 13

　　　　　　Debtors.

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Joseph B. Lyle, Esq. | Helen C.T. Smith, Esq. |
| Hale, Lyle & Russell | Assistant United States Attorney |
| Post Office Box 274 | 220 W. Depot Street, Suite 423 |
| Bristol, Tennessee 37621-0274 | Greeneville, Tennessee 37743 |
| *Counsel for United Southeast* | *Counsel for United States* |
| *Federal Credit Union* | *Department of Agriculture* |

**MARCIA PHILLIPS PARSONS**
**UNITED STATES BANKRUPTCY JUDGE**

　　　　This chapter 13 case is before the court on the parties' cross motions for summary judgment. For the reasons stated hereafter, the motion of the United States Department of Agriculture ("USDA") will be granted. This is a core proceeding. *See* 28 U.S.C.§ 157(b)(2)(B) and (L).

I.

The debtors Donnie Wilton Price and Patricia Ann Price filed for bankruptcy relief under chapter 13 on July 21, 2005. In their schedules, they list their residence as 2744 Hickory Tree Road, Bluff City, Tennessee ("Property"), with a current market value of $70,000, and state that there are two secured creditors with liens on the Property: a first deed of trust in favor of the USDA in the amount of $80,971 and a second deed of trust held by United Southeast Federal Credit Union ("Credit Union") with a claim of $30,499. In their proposed chapter 13 plan, the debtors provide that the USDA will retain its lien and be paid its monthly maintenance payment of $414 during the pendency of the case by the chapter 13 trustee. The plan also provides for the arrearage owed USDA plus 2% interest to be paid at the rate of $50 a month. With regard to the claim of the Credit Union, the plan states that the deed of trust will be "stripped-off, avoided and treated as an unsecured claim . . . ." Unsecured creditors under the plan will receive funds available after secured and priority debts are paid, with the distribution estimated at 20% to 70%.

Both the USDA and the Credit Union filed timely proofs of claim. According to the USDA, the balance owed it by the debtors as of the date of the filing of the bankruptcy petition is $81,207.98. The Credit Union's proof of claim indicates that it was owed $30,254.96 as of the bankruptcy filing.

The Credit Union timely objected to the debtors' proposed plan on the basis that the Property's value is greater than the amount of USDA's claim and therefore, modification of the Credit Union's claim is prohibited by 11 U.S.C.§ 1322(b)(2). In conjunction with its objection to the debtors' plan, the Credit Union also filed an objection to the USDA's proof of claim, asserting that the claim includes unmatured and contingent amounts and that if these unmatured and contingent amounts were disallowed under 11 U.S.C.§ 502, the balance owed to the USDA by the debtors would be substantially less than the value of the Property. The value of the Property and the amount of USDA's claim are determinative of the permissible treatment of the Credit Union's claim under the plan: if there is no equity in the Property over and above the USDA's first lien, then the Credit Union's claim is wholly unsecured and can be modified. *See In re Lane*, 280 F.3d 663 (6th Cir. 2002). However, if there is any equity in the Property, even a dollar, that secures the Credit Union's claim, then modification is impermissible. *Id.* at 664 (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 327, 113 S. Ct. 2106 (1993)). Both the Credit Union's objection to the plan and its

2

objection to the USDA's claim are the subject of the motions for summary judgment filed by the Credit Union and the USDA and presently pending before the court.

II.

The debtors' relationship with the USDA began in 1984 when they borrowed the sum of $38,500 to finance the construction and purchase of the Property. The debtors executed a promissory note in favor of the USDA, secured by a properly recorded deed of trust. In 1985, the debtors applied for and were approved for participation in the USDA's Subsidy Repayment Program, a federal program designed to further the goal of home ownership for low- and very low-income borrowers who live in rural areas by offering the borrowers mortgage payment assistance in the form of a subsidy repayment/interest credit. *See* 42 U.S.C. § 1472, *et seq.* Under the program, the amount of monthly mortgage payment which the borrower is required to make is reduced to the greater of 20% of the borrower's adjusted family income or 1% interest under the loan, with the difference between the reduced payment and the actual mortgage payment due under the terms of the loan being the subsidy. 7 C.F.R. 3550.69. For example, if under the terms of the loan the borrower's monthly mortgage payment, including principal, interest, taxes, and insurance, would otherwise be $500, but the subsidy program indicates that the borrower's payment should be $400, then his payment is lowered to $400 and $100 is considered the payment subsidy. The amount of the subsidy "received" by the borrower over the life of the loan is accumulated and all or a portion of the subsidy is subject to recapture by the USDA, i.e., repayment by the borrower. Under both the terms of the loan documents and under the applicable statute, the accumulated subsidy is considered a debt secured by the real property. 42 U.S.C. § 1490a(a)(1)(D)(i).[1] Whether a borrower has to

---

[1] This section provides:
With respect to borrowers under section 1472 or 1487(a) of this title who have received assistance under subparagraph (B) or (C), the Secretary shall provide for the recapture of all or a portion of such assistance rendered upon the disposition or nonoccupancy of the property by the borrower. In providing for such recapture, the secretary shall make provisions to provide incentives for the borrower to maintain the property in a marketable condition. Notwithstanding any other provision of law, any such assistance whenever rendered shall constitute a debt secured by the security instruments given by the borrower to the Secretary to the extent that the Secretary
(continued...)

eventually repay all or only a portion of the subsidy depends upon the circumstances which give rise to the satisfaction of the mortgage debt. If the borrower disposes of or ceases to occupy the residence, then the borrower will be required to pay the accumulated subsidy in full. However, if the borrower pays off the mortgage, the amount of subsidy that is subject to recapture is calculated and reduced by a certain statutory formula which takes into account the realty's value and appreciation during the term of the loan. Thus, the regulations contain a built-in incentive for a borrower to maintain the realty during the life of the loan and to pay off the loan rather than default, as the amount of subsidy the borrower will have to pay upon repayment of the loan is reduced, with the borrower receiving the benefit of the majority of any appreciation in the realty.

Qualification for the subsidy program along with the amount of the required monthly payment is determined on an annual basis. The debtors in the instant case have participated in the subsidy repayment program every year since 1985, with the amount of their monthly payment varying depending on their annual income. As of the debtors' bankruptcy filing, the amount of payment assistance/subsidy that had been provided the debtors was $52,589.29; the principal balance of the USDA loan, along with accrued interest and other recoverable amounts, was $28,619.35. The sum of these two amounts, $81,208.64, is the amount set forth in the USDA's proof of claim.

The Credit Union's objection to the USDA's claim is that the amount of payment assistance included in the claim is contingent and unmatured, subject to being fully repaid by the debtors only if they cease occupancy or dispose of their home. According to the Credit Union, the USDA's claim should be limited to the amount it would have been paid if the debtors had paid off the USDA debt as of the date of the bankruptcy filing. Although this exact amount has not been determined, the parties have stipulated that if the debtors had paid the USDA loan in full as of that date, the payoff amount, including the amount of subsidy which the debtors would be required to repay, would have been less than $70,000. Consequently, the Credit Union asserts that the court should estimate the USDA's claim at this hypothetical, less-than-$70,000 amount, thereby creating at least a dollar of

---

[1](...continued)
may provide for recapture of such assistance.

equity in the Property to which the Credit Union's claim can attach, thus preventing modification of the Credit Union's claim in the debtors' chapter 13 plan. According to the Credit Union, estimation is authorized under 11 U.S.C. § 502(c) or under the court's § 105 equitable powers, would only be for the purpose of determining the extent of the USDA's lien, and would not impair the USDA's ability to recapture the full amount of the accumulated subsidy if the debtors were to ever default in payment.

In response, the USDA contends that although the amount of the subsidy the debtors will eventually be required to repay is uncertain, their liability for the entire accumulated subsidy is already established and is therefore not contingent since both the USDA loan documents[2] and 42 U.S.C. § 1490a(a)(1)(D)(i) provide that the payment assistance is debt secured by the real estate. The USDA also maintains that because there is no basis for disallowance of its claim under 11 U.S.C. § 502(b), its claim must be allowed in its entirety. As to the Credit Union's estimation argument, the USDA asserts that there is no legal authority for estimation because the debtors did not pay off the debt on the date of bankruptcy, and the mere fact the debtors filed for bankruptcy relief is not a triggering event for the calculation and reduction of the subsidy amount. The USDA also contends, contrary to the Credit Union's assertion, that it would be prejudiced by an estimation because disallowance of a claim is a final order that would preclude the USDA from ever collecting any amount other than the amount fixed by the court, regardless of the debtors' subsequent repayment behavior.

At first blush, the Credit Union's argument has facial appeal. Under § 502(b) of the Bankruptcy Code, if an objection is made to a proof of claim, the court is directed to "determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." From this language, it would appear that the Credit Union's argument has merit and that the USDA's claim should be determined and allowed at the amount that would be owed if the debtors paid off the claim as of their bankruptcy filing. Furthermore, the Credit Union's desire

---

[2] The deed of trust held by USDA provides, "This instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. § 1490a."

to limit the USDA's claim to the amount owed as of the bankruptcy filing in order to preserve the Credit Union's own secured status in this case is appealing if it could be accomplished without impairing the USDA's future collection efforts. However, a closer examination of the issue reveals the weaknesses in the Credit Union's arguments.

The foregoing quote from § 502(b) was only a partial one. In its entirety, the provision states that the court is to determine and allow the amount of the claim as of the bankruptcy filing "except to the extent that" and then proceeds to enumerate nine exceptions to the general allowability rule. The first exception in paragraph (1) of § 502(b) is that the claim is to be allowed unless "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" Thus, the mere fact that a claim is contingent or unmatured does not render it unenforceable within the meaning of § 502(b)(1). 4 *Collier on Bankruptcy* ¶ 502.03[2][b][iii] (15th ed. rev. 2006).

The Bankruptcy Code does address the estimation of contingent claims. Section 502(c)(1) provides: "There shall be estimated for purpose of allowance under this section— (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." According to the Fifth Circuit Court of Appeals, this provision serves two purposes:

> First, it is designed to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions. By so doing, the trustee can more rapidly determine the payout to each creditor who, in the meantime, receives no interest on its claims. Second, section 502(c)(1) is designed to promote a fair distribution to creditors through a realistic assessment of uncertain claims.

*Matter of Ford*, 967 F.2d 1047, 1053 (5th Cir. 1992). Under the express language of the statute, "[i]n order for the estimation process of § 502(c) to apply, a claim must be contingent or unliquidated and fixing the claim must entail undue delay in the administration of justice." *Matter of Continental Airlines*, 981 F.2d 1450, 1461 (5th Cir. 1993).

In the present case, regardless of whether the claim of the USDA is actually contingent, a matter the parties dispute, there is no indication that determination of the claim is necessary to avoid undue delay in the administration of the debtors' bankruptcy case. This is not a liquidation case

where estimation is required in order to determine each creditor's pro rata share of the debtors' assets. Nor is estimation required for the administration of the debtors' chapter 13 plan. The plan does not contemplate payment in full of the USDA debt during the plan. Rather, the debtors' plan provides for maintenance payments by the trustee while the case is pending, with the payments thereafter to continue by the debtors after the plan is completed. *See* 11 U.S.C. § 1322(b)(5). Thus, the estimation process of § 502(c) is not implicated in the instant case.[3] *See In re Baron*, 1999 WL 33490224, *4 n.11 (Bankr. D. Idaho December 3, 1999) (court refused to estimate or determine creditor's claim, notwithstanding debtor's objection, where claim was not being paid through chapter 13 plan).

Notwithstanding that estimation is not *required* by § 502(c), it has been pointed out that § 502(c) "does not prohibit estimation in circumstances other than those set forth in the section." *Matter of King*, 102 B.R. 184, 187 (Bankr. D. Neb. 1989), *rev'd on other grounds*, 137 B.R. 43 (D. Neb. 1991) (overruling debtor's objection to the IRS's estimated claim which was based on the argument that only contingent and unliquidated claims may be estimated). However, this court has been unable to locate any case where this discretion was exercised, other than in the aforementioned case where the court held that the mere fact that an IRS claim was filed in an estimated amount did not provide a basis for objecting to the claim.

Furthermore, contrary to the Credit Union's argument that estimation would not prejudice or impact the USDA's claim, estimation would result in the claim being disallowed except to the extent of the estimation and the USDA would be precluded from recovering the entire subsidy if the debtors subsequently defaulted.

> Section 502(c) expressly states that estimation is "for purpose of allowance under this section"; thus, an estimation under section 502(c) generally should result in an allowed claim for all purposes in the bankruptcy case. . . . Indeed, nowhere in

---

[3] Fed. R. Bankr. P. 3018(a) does permit a bankruptcy court, after notice and hearing to "temporarily allow" a claim for the purpose of accepting or rejecting a plan and pertains to the situation where an objection has been filed to a claim, which objection would otherwise prevent the claimholder from voting on the plan. *See* 9 *Collier on Bankruptcy* ¶ 3018.01[5] (citing, *inter alia*, 11 U.S.C §§ 1126(a) and 502; *In re M. Long Arabians*, 103 B.R. 211, 215 (B.A.P. 9th Cir. 1989)). However, by its terms, the rule only applies in cases under chapters 9 and 11.

>the Bankruptcy Code is a distinction drawn between claims allowed under subsection 502(a), (b) or (c). Accordingly, a claim allowed under section 502(c) is on equal footing with other claims allowed under section 502.

5 *Collier on Bankruptcy* ¶ 502.04[3]. While the treatise *Collier on Bankruptcy* does observe that "[e]stimation orders under section 502(c) may be limited by the court either out of deference to the parties' request or to nonbankruptcy proceedings for determination of claims," *Id.* (citing, *e.g, In re Bicoastal Corp.*, 122 B.R. 771, 773 (Bankr. M.D. Fla 1990)), in the present case there are no nonbankruptcy proceedings to which this court can defer determination of the USDA's claim and there is no agreement by the parties that the claim should be estimated.

It should also be noted that in at least one case, a bankruptcy court has refused to limit a USDA's subsidy claim such as the one herein to the amount the USDA would have received if the debtor had paid off the mortgage. *See Therriault v. Schaefer (In re Therriault)*, 2002 WL 31767813 (Bankr. D. Vt. 2002). In *Therriault*, the bankruptcy court overruled the second mortgage holder's objection to the USDA claim, stating that the statutory provisions for reducing the subsidy owed upon the repayment in full by the borrower "are simply not applicable to the debtor's circumstances where she remains in occupancy of her residence, is current on her [USDA] mortgage obligations, and intends to continue to occupy the premises and make monthly payments." *Id* at *5.

The Credit Union argues that *Therriault* was wrongly decided because the bankruptcy court failed to recognize the subsidy portion of the claim as contingent, although observing that the court may have failed to consider this argument because it was not raised by the second mortgage holder. However, notwithstanding the absence of any discussion of the USDA's claim as contingent, implicit in the *Therriault* court's ruling was a rejection of any attempt to limit the USDA's claim based on a hypothetical set of facts – payment of the mortgage debt in full as of the bankruptcy filing. The same rationale is appropriate in the present case. Additionally, as previously discussed, the mere fact that the claim may be contingent under certain circumstances imposes no basis for estimation of the claim where estimation is not necessary to avoid undue delay in the administration of the case.

As a supplement to its § 502(c) argument, the Credit Union asserts that this court has the equitable authority under § 105(a) of the Bankruptcy Code to temporarily fix the USDA's claim at

the amount it would have been paid if the debtors had paid the claim in full as of the bankruptcy filing. In support of this proposition, the Credit Union cites the principle that "a bankruptcy court 'may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing it may adopt that remedy which it deems most appropriate under the circumstances.'" *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (quoting *In re Stirling Homex Corp.*, 591 F. 2d 148, 155-56 (2d Cir. 1978)). The Sixth Circuit Court of Appeals, however, has declared that § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000).

> Although § 105(a) permits a bankruptcy court to use its equity powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," "the equitable powers of section 105(a) may only be used in furtherance of the goals of the Code." As the Supreme Court has recognized, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."

*Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 621 (6th Cir. 2004) (internal citations omitted). *See also In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (Section 105(a) "grants the bankruptcy court the power to take appropriate equitable measures needed to implement other sections of the Code.").

Applying the directives of the Sixth Circuit Court of Appeals, this court is unable to identify which provision of the Bankruptcy Code the court would be implementing if it were to limit the USDA's claim to the amount it would have been paid if the debtors had theoretically paid off their USDA obligation as of the date of the filing of their petition. Additionally, even if this court concluded that it had the equitable power to rule as requested by the Credit Union, it is unable to find that the equities lie in the Credit Union's favor. The USDA's deed of trust was on record at the time that the Credit Union advanced monies to the debtors. Thus, the Credit Union was on constructive notice that the USDA deed of trust secured not only the principal and interest owed it, but also the recaptured subsidy, and that if the debtors defaulted with respect to the first mortgage, a foreclosure could wipe out any claim by a second mortgage holder. While it may seem unfair, the court is not inclined to fashion a equitable remedy that would alleviate the impact of the debtors' bankruptcy on the Credit Union's claim, merely because the Credit Union is dissatisfied with the

result.

### III.

An order will be entered in accordance with this memorandum, granting summary judgment in favor of the USDA with regard to the Credit Union's objection to the USDA's claim and denying the Credit Union's summary judgment motion in this regard. Because the Credit Union's objection to the debtors' proposed plan was dependent upon successfully objecting to the USDA's claim, the order will also provide that the Credit Union's objection to the debtors' plan is overruled.

# # #